155 A.2d 596 (1959)
Bernard LIEBERMAN, Plaintiff-Appellant,
v.
Joseph BECKER, Stanley H. Brown, Robert H. McClintic, Richard K. Mellon, Lawrence M. Murray, Robert S. Oelman, Arthur B. Van Buskirk, W. F. Munnikhuysen, W. F. Perkins and Koppers Company, Inc., Defendants-Appellees.
Supreme Court of Delaware.
October 28, 1959.
Irving Morris, of Cohen & Morris, Wilmington, for appellant. Milton Paulson, New York City, of counsel.
James M. Tunnell, Jr., George T. Coulson and Andrew B. Kirkpatrick, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*597 WOLCOTT, Justice.
This is an appeal from a judgment of the Vice-Chancellor granting summary judgment for the defendants. The action seeks to have declared partially invalid a so-called Deferred Compensation Unit Plan for corporate executives and employees.
Koppers Company, Inc., is a Delaware corporation, engaging, inter alia, in the production and sale of crude and refined tar and related products. It is a large business.
In 1956 Koppers' stockholders approved the adoption of a Deferred Compensation Unit Plan for officers and employees. Under the plan 100,000 units were created, each of which represented one share of Koppers' common stock. The plan provided that at no time may there be more than a total of 100,000 units outstanding, of which not more than 5,000 units may be assigned to any one individual.
A committee of five directors, themselves ineligible to participate in the plan, was created to award the units of the plan to various officers and employees.
Each assigned unit of the plan is credited with an amount equal to dividends paid on one share of Koppers' common stock during the period commencing with the participation of the particular employee and ending with the termination of employment of the participant. Under the plan to qualify the participants for compensation, termination of employment must be by death, retirement or disability.
In addition to the dividend credit, each unit is further credited with a market appreciation item measured by the difference between the market price of Koppers' common stock on the day on which the unit is assigned, and the market price of Koppers' common stock on the day of termination of employment, provided that, upon termination of employment, the participant in the plan, or his beneficiary  in the event of termination by reason of the participant's death  may elect to fix the latter market price as of the date of termination of employment or as of any date within three years after the termination of employment. In no case, however, may the market price on the selected value date exceed the highest market price of Koppers' stock between the date of assignment of the unit and the date of termination of employment.
*598 Thereupon, the total amount of deferred compensation payable to the participant or his beneficiary consists of the total of the dividend credit and the excess market value credited to the participants' units. Such deferred compensation then becomes payable over a period of ten years following the termination of employment in quarterly installments.
In order to participate in the Deferred Compensation Unit Plan, an employee to whom the committee of directors proposes to assign units is required to agree to remain in Koppers' employment for a period of five years, or until retirement; to hold himself after retirement available for consultation for an additional period of ten years; not to compete with Koppers; and not to become an employee of a competitor of Koppers. An inherent condition of receiving the deferred compensation is that the participant be in the employ of Koppers at the time of termination of employment.
The board of directors of Koppers set aside 50,000 shares of Koppers' unissued common stock as a reserve to support the plan, and for subsequent issue and sale if and when it becomes desirable to provide funds to pay benefits under the plan. This action was approved by the stockholders in voting approval of the plan.
To date, the committee of directors has assigned a total of 91,600 units to various employees of Koppers. As these assigned units expire by termination of employment of the participant, they then become available for reassignment to other employees. In addition, for the years 1956 and 1957, Koppers has established reserves for payments under the plan in excess of $700,000.
The Vice Chancellor granted summary judgment to the defendants, ruling that the Deferred Compensation Unit Plan is reasonably designed to achieve a legitimate business purpose  that of retaining qualified executive personnel in the employ of Koppers. From this judgment, plaintiff appeals.
The Deferred Compensation Unit Plan of Koppers is to be held valid or invalid in accordance with the application of two fundamental rules of law as to which there can be no argument.
The first rule is that a plan for additional compensation of executives and employees is to be held valid only if consideration passes to the corporation at the time the plan is put into effect. Gottlieb v. Heyden Chemical Corp., 33 Del.Ch. 82, 90 A.2d 660; 33 Del.Ch. 177, 91 A.2d 57; Kerbs v. California Eastern Airways, Inc., 33 Del.Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839.
The second rule is that there must be a reasonable relation between the value of the benefit conferred by the plan upon the employee and the value to the corporation of the employee's service to it. Kerbs v. California Eastern Airways, Inc., supra.
There is no doubt that the first rule is satisfied by this plan. Each employee participating in the plan is required to enter into a formal agreement to stay with the company for at least five years; to be a consultant for the company for at least ten years after retirement; never to compete with the company or become an employee of a competitor, and finally, inherent in the plan, that he remain with the company until retirement qualifies him for the benefits under the plan. Thus, the plan insures the retention of valued services which is sufficient consideration passing to the company.
The main thrust of plaintiff's argument, however, is directed toward the second rule. He argues that there is no reasonable relation between the value of the benefits conferred upon the employee by the plan and the value of his services to the company.
Plaintiff does not attack the dividend credit provision of the plan, conceding that the income of the company upon which dividends are ultimately based bears a reasonable relation between the value of the *599 dividends credited under the plan and the employee's services. He does attack, however, the feature of the plan which credits to the unit account of the employee the so-called excess market appreciation measured by the difference between the market value of Koppers' stock at the time of termination of employment and the market value of that stock at the time the employee entered into the plan.
The basis of his attack is that market value of common stock is too speculative an element to form a reasonable basis for determining executive compensation. In his own words, the argument is as follows:
"Under the market appreciation factor of the Koppers' phantom stock plan, compensation is tied to the vagaries of the stock market. There is therefore no reasonable relationship between compensation so computed and the value of the services thus compensated, unless by chance. Compensation of this character, because it is erratic and also because it exposes the company to an indeterminate liability, is an improper disposition of corporate funds."
Plaintiff points to a variety of factors which determine the market price of common stock, including interest rate on money, corporate earnings, the business cycle, commodity prices, the psychology of the buying public, labor relations, and others, and thus argues that the employee's services do not necessarily have any direct relation to the fixation of the market price of the securities of the corporation for which he works.
He points to the option given the employee or his beneficiaries under the plan to select at any time within three years after termination of employment a market price of Koppers' stock to determine the excess market appreciation as a recognition by the company itself that there in fact exists no reasonable relation between the market price of Koppers' stock and the value of the employee's services since, if there were in fact such a relation, the value of those services should be reflected in the market price on the date of termination of employment.
Plaintiff also points to the two instances of retirement under the plan which have taken place since its inception. In both of these cases, one of which was termination of employment by death, and the other of which was termination of employment by retirement, there was no market appreciation existing at the time of termination of employment and, consequently, the election was made to fix a value under the three-year option period.
Plaintiff also points to the market quotations in Koppers' stock over a period of fourteen years ranging from a low in 1945 of 28, to a high in 1955 of 60, and back to a low in 1959 of 41¾ as an indication of the volatility of Koppers' stock on the exchange, and as a further indication that the market price of corporate stock is not determined to any large extent by the services of Koppers' employees.
And, finally, plaintiff argues that the market appreciation feature of the plan is invalid as a gift of corporate assets because the plan sets no limits on the ultimate amounts for which the company might be liable under it.
It is argued that the plan under consideration differs materially from the ordinary stock option plan for the compensation of employees, repeatedly upheld as valid, because, primarily, the liability of the company is unlimited under the Deferred Compensation Unit Plan but is fixed under the ordinary option plan, and to the further fact that under the ordinary option plan the employee becomes a stockholder, thus risking the loss of his investment, while under the Deferred Compensation Unit Plan the employee incurs no risk of loss of capital.
In answer, the corporation maintains that the plan under consideration is designed *600 primarily to retain the services of valued employees, and is admirably designed to accomplish this result. While the corporation argues that services of employees do reflect themselves in the market price of the corporate stock under a long range view, nevertheless the main basis urged in support of the plan is that, fundamentally it is not dissimilar to an ordinary restricted stock option plan and, consequently, should be upheld by the courts.
We think that fundamentally the Deferred Compensation Unit Plan is no more liable to attack upon the ground of no existing reasonable relation between the amount of compensation and the value of services than is the ordinary stock option plan. An ordinary stock option plan, based as it is upon a rise in the stock price on the stock exchange, is equally subject to the vagaries of the market for the realization by the employee of his reward. If, as plaintiff contends, there must be a demonstrable, reasonable relation between the value of the employee's service and the profit harvest he ultimately reaps on the stock market, we fail to understand his tolerant concession that the restricted stock option plan does not constitute a gift of corporate assets. If the acid test is a demonstrable relationship, then both types of plans, we think, are subject to the same fatal flaw. On the other hand, if one is a valid exercise of corporate power, by the same token the other is equally valid.
We must assume that the committee of directors charged with the administration of this plan will do so in the good faith exercise of their considered business judgment. Indeed, there is no charge that they have done otherwise. Certainly, therefore, assignments of units will be made on the basis of the committee's judgment of the worth of the employee's services to the company, his length of service and contribution in the past and to be expected in the future to the company's prosperity, and numerous other factors, not the least of which should be their best guess of the future prospects of the company's stock on the open market. A decision by responsible businessmen reached after careful consideration of these factors, without bad faith or fraud, is entitled to weighty consideration by the courts. Cf. Kaufman v. Shoenberg, 33 Del.Ch. 211, 91 A.2d 786.
Plaintiff's argument basically comes down to a proposition that the required reasonable relationship of value must be capable of being expressed in dollars and cents. It is, of course, obvious that to do so under the plan before us would be an impossibility, but it is equally obvious that under the ordinary restricted stock option plan it would be impossible to determine initially a dollars and cents value of the compensation ultimately to be received by the employee.
The only remaining feature dwelt upon by the plaintiff which requires specific notice by us is his contention that the plan is invalid because it imposes an indefinite and unlimited liability upon the corporation. Such, however, is not the fact. By the plan, itself, a reservation is made which would permit the board of directors to terminate it at any time, and if the board elects to terminate within five years from its effective date, no credit under the market appreciation provision would be made to the account of any participant. Furthermore, the Administration Committee for the plan may at any time prior to a participant's termination date reduce or cancel all units standing to the credit of the participant.
A further limitation upon liability of the company exists in the setting aside as a reserve for the purposes of the plan of a substantial block of unissued but authorized shares of the company. This means that if there is a large rise in market price imposing an unexpected liability on the company to meet its obligations under the plan, the company could sell in the open market a sufficient number of its shares thus set aside to satisfy the requirements of the plan. It could, for example, elect to sell *601 the same number of shares as there were units entitled to compensation payments, thus putting itself in the same position as though at the time of the effective date of the participation in the plan, options had been granted the employee at the then market price of Koppers' stock.
We think that there is no substance to the contention that the plan is invalid because of the existence of the possibility of an unlimited liability against the company. As a matter of fact, however, such a reason would not seem to be sufficient in any event to strike down a plan of compensation at the time of its institution. However, in the event matters got out of hand, the courts undoubtedly could prevent the waste of corporate assets if the actual amounts to be paid under the plan became so large as to be wholly unreasonable. Cf. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385.
We think, fundamentally, there is no difference between the Deferred Compensation Unit Plan and the ordinary stock option plan. Both types of plans are designed to retain the services of valued employees, and we think the Deferred Unit Plan is designed to accomplish this more effectively than is the ordinary stock option plan. In any event, whether or not a corporation should embark upon such a method of compensating its employees is to be decided by the board of directors by the exercise of their business judgment. When a corporate decision is made in the light of the best business judgment of its management, absent fraud or bad faith, the courts do not interfere. Davis v. Louisville Gas & Electric Co., 16 Del.Ch. 157, 142 A. 654.
In the case at bar, the plaintiff expressly disclaims any contention that the directors of Koppers, in adopting and proposing the Deferred Unit Compensation Plan, were guilty of fraud or bad faith. As a matter of fact, the plan, having received the express approval of a large majority of the stockholders of the company, makes any such contention immaterial and, in fact, places upon the protesting stockholder a heavy burden in his attack upon the plan. Gottlieb v. Heyden Chemical Corp., supra.
Finally, one more observation is required. Plaintiff relies strongly upon the case of Berkwitz v. Humphrey, D.C., 163 F.Supp. 78, which held invalid a similar plan. The reasons for the ruling of the court in the Berkwitz case are set forth in a very lengthy opinion. They are substantially the same as those urged to us by the plaintiff. We have rejected these reasons.
The judgment of the Vice Chancellor is affirmed.