**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 13-1914

MARTA BRYCELAND,

Plaintiff, Appellant,

v.

MICHAEL R. MINOGUE, W. GERALD AUSTEN, LOUIS E. LATAIF,
DOROTHY E. PUHY, MARTIN P. SUTTER, HENRI A. TERMEER,
PAUL G. THOMAS, and ABIOMED, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Ex Kano S. Sams II, with whom Lionel Z. Glancy, Michael Goldberg, Brian Murray, Glancy Binkow & Goldberg LLP, David Pastor, Pastor Law Office, LLP, Patrick Powers, Powers Taylor, LLP, Willie C. Briscoe, and The Briscoe Law Firm, PLLC were on brief, for appellant.

John D. Donovan, Jr., with whom Daniel V. Ward, Matthew Mazzotta, Elizabeth D. Johnston, and Ropes & Gray LLP were on brief, for appellees.

June 10, 2014

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** Marta Bryceland appeals the dismissal of her shareholder derivative action brought on behalf of Abiomed, Inc. Because Bryceland's complaint fails to plead with the required particularity that a demand to the directors for remedial action would have been futile, we affirm.

On defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the following facts are taken as stated in the complaint. Abiomed is a Delaware corporation with its principal place of business in Massachusetts. It develops products to assist or replace the pumping of the human heart, and the company's promotion of one such device, the Impella 2.5, led to this lawsuit.

In June 2011, a letter to Abiomed from the Food and Drug Administration (FDA) alleged that some advertising materials appeared to market the Impella 2.5 for uses that the FDA had not approved. Abiomed publicly disclosed its receipt in the company's later mandatory quarterly filing with the Securities and Exchange Commission (SEC):

> [W]e received a warning letter from the FDA stating that some of our promotional materials marketed the Impella 2.5 for uses that had not been approved by the FDA. We have cooperated with the FDA in addressing its concerns and believe that we have resolved the matter without any penalties. Although we believe that this issue has been resolved, if similar matters come up in the future, we may not be able to resolve them without facing significant consequences. Such matters could result in reduced demand for our products and would have a material adverse effect on our operations and prospects.

In April 2012, the FDA wrote to Abiomed again alleging that some Impella 2.5 promotional materials continued to violate FDA regulations. Abiomed's next SEC filing disclosed this letter as well:

> In June 2011 we received a warning letter from the FDA stating that some of our promotional materials marketed the Impella 2.5 for uses that had not been approved by the FDA. We cooperated with the FDA and made changes to our promotional materials in response to the warning letter. However, in April 2012, we received a follow up letter from the FDA stating that some of our promotional materials continued to market the Impella 2.5 in ways that are not compliant with FDA regulations. We are cooperating with the FDA in addressing its concerns. While we hope to be able to resolve this matter without incurring penalties, we may not be able to resolve it, or any similar matters that may come up in the future without facing significant consequences. Such matters could result in reduced demand for our products and would have a material adverse effect on our operations and prospects.

In October 2012, Abiomed received a subpoena from the U.S. Attorney's Office for the District of Columbia, which was investigating Abiomed's marketing materials. Abiomed made the subpoena known in a special press release:

> On October 26, 2012, Abiomed was informed that the United States Attorney's Office for the District of Columbia is conducting an investigation that is focused on the Company's marketing and labeling of the Impella 2.5. On October, 31, 2012, Abiomed accepted service of a Health Insurance Portability and Accountability Act administrative subpoena related to this investigation. The subpoena seeks documents related to the Impella 2.5 and

> we understand the investigation focuses primarily on marketing and labeling issues. Abiomed is in the process of responding to the subpoena and intends to cooperate fully.

A sharp drop in Abiomed's stock price followed. Some four months later, and after this lawsuit had been brought, the FDA wrote Abiomed that the agency had completed its evaluation and that the company had addressed the problems to the agency's satisfaction. The current status of the U.S. Attorney's investigation is unknown. At oral argument, defendants' counsel represented that Abiomed has heard nothing from the U.S. Attorney's Office since responding to the subpoena.

Bryceland, an Abiomed shareholder, brought this derivative action in federal court on behalf of the corporation against its seven directors, one of whom is also the President and CEO. Bryceland's overarching theory, running through the multiple counts of the complaint, is that the defendants breached their fiduciary duties to Abiomed because, with them at the helm, the company both unlawfully marketed the Impella 2.5 and issued public statements that were overly sunny in the face of the corporation's potential liability. Bryceland takes particular exception to the fact that, in the intervals between the unfavorable disclosures, the directors approved the issuance of press releases of positive financials without reiterating cautions about the potential liability associated with the FDA inquiry.

Defendants moved to dismiss the complaint on the grounds that it failed both to plead with particularity that a demand for corrective action would have been futile, and to state a claim of substantive liability.  The district court dismissed for want of a particularized futility allegation.[1]

Among other things, Bryceland says that the district court failed to accept her allegations as true, to treat them collectively, and to draw inferences in her favor.  But because our review of the dismissal of a derivative suit for failure to plead with particularity is de novo, see Union de Empleados de Muelles de P.R. PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of P.R., 704 F.3d 155, 162-63 (1st Cir.), cert. granted, 133 S. Ct. 2857, and cert. dismissed, 134 S. Ct. 40 (2013), rather than answer each of Bryceland's assignments of error, it will suffice to highlight the deficiencies in her complaint.  We accept as true all well-pleaded facts and draw all reasonable inferences in her favor.  Mass. Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229, 237 (1st Cir. 2013).

A derivative action permits a shareholder to enforce corporate rights that the corporation itself is unable or unwilling to enforce on its own.  See Union de Empleados, 704 F.3d at 159.

---

[1] The complaint contains no allegation that before filing suit Bryceland had sought to learn any details of actions by the directors that might have been disclosed if she had requested access to corporate records, to which she was entitled under Del. Code Ann. tit. 8, § 220.  The defendants have represented without contradiction that she made no such pretrial request.

Before invoking this procedural device a shareholder must demand that the corporation take action, unless such a demand would be futile, and the shareholder's complaint must accordingly either state that her demand was rebuffed (or inadequately honored) or explain why a demand would have proven pointless. See id. In such a case, despite the relative laxity of pleading requirements generally, see Fed. R. Civ. P. 8(a)(2), a special rule governing derivative actions requires the complaint to "state with particularity" the shareholder's efforts to make a demand or her reasons for failing to do so, id. 23.1(b)(3). Because Bryceland's complaint does not claim that she made a demand for action by the defendants, and it is undisputed that she made none, this appeal turns on the requirement that she plead with particularity the futility of a demand, and, given Abiomed's incorporation in Delaware, we look to Delaware law to determine the substance of what the complaint must particularly allege. See Union de Empleados, 704 F.3d at 163. Delaware law offers two tests for assessing a demand-futility pleading.

The first comes from Aronson v. Lewis, where the Delaware Supreme Court explained that demand will be excused as futile if, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d 805, 814 (Del.

1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). While only the second Aronson prong explicitly refers to a challenged transaction, subsequent cases indicate that the first prong's inquiry into disinterest and independence also focuses on a specific transaction. See Pogostin v. Rice, 480 A.2d 619, 624 (Del. 1984), overruled on other grounds by Brehm, 746 A.2d 244. In short, under Aronson, demand will be excused as futile if the complaint alleges particular facts that call into question whether the board discharged its duty of loyalty (Aronson's first prong) or its duty of care (Aronson's second prong) at the time of a specific transaction.

This concentration on the time of transaction rendered Aronson's test inapposite to the facts of the later case of Rales v. Blasband, where the challenged decision was made not by the board of the corporation on whose behalf the action was brought, but rather by the board of a wholly owned subsidiary. 634 A.2d 927, 932-33 (Del. 1993). The Delaware Supreme Court explained:

> [A] court should not apply the Aronson test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit. This situation would arise in three principal scenarios: (1) where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where, as here, the decision being challenged was made by the board of a different corporation.

Id. at 933-34 (footnotes omitted). Rales announced a new test to be used in these cases: demand will be excused as futile if "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. at 934. Importantly to our case, Rales applies where the subject of a derivative action is not a board's business decision but rather its failure to oversee. See Wood v. Baum, 953 A.2d 136, 140 (Del. 2008).

After analyzing Bryceland's suit as concerned not with a specific decision but with a failure in oversight, the district court applied the Rales test. Bryceland calls instead for the test under Aronson, contending that her action challenges particular decisions of the board, both the decision to market the Impella 2.5 unlawfully and the decision to issue public statements that were misleadingly optimistic in light of Abiomed's potential liability. We think the trial judge made the better call in following Rales, though this case is not an easy one to categorize. In any event, that choice is not crucial, because Bryceland's complaint fails to plead particular facts that cast doubt on either the board's disinterest or independence at any point (precluding success under Rales or Aronson's first prong), or the board's business judgment

-8-

at the time of any specific decision (precluding success under Aronson's second prong).

As for disinterest or independence, we will assume, without deciding, that Bryceland raises a doubt to the requisite degree about the disinterest of one of the directors, who doubles as Abiomed's CEO. Her complaint alleges that this defendant derives his principal income from his employment as an Abiomed officer and that he certified a number of the company's SEC filings, which Bryceland claims were misleading. And, given the small size of the company, one might infer that its CEO would have overseen (or at least have had knowledge of) the creation of the controversial promotional materials and statements of corporate prospects, giving him special reason to fear further probing into the company's marketing decisions and publicity. Delaware courts have accordingly suggested that there is reason to doubt the disinterest of a director who has a substantial financial stake in maintaining a position as an officer. See, e.g., Rales, 634 A.2d at 937.

But one is not enough. Under either Aronson or Rales the complaint must cast doubt on the disinterest or independence of a majority of the board, see Rales, 634 A.2d at 937; Aronson, 473 A.2d at 815 & n.8, and to survive the motion to dismiss in reliance on interest or lack of independence, Bryceland's allegations must particularly raise doubt about the capacity of at least three more

members of the seven-member board. It does not.[2] Instead, the complaint's deficiencies fall into two categories. The first includes failure to state particular facts, in lieu of which the complaint contains a series of conclusory statements that can satisfy neither Aronson nor Rales. See Brehm, 746 A.2d at 254. The second covers allegations that fail to show futility under Delaware law, whether based on interest-dependence or the absence of valid business judgment behind action taken.

As a representative example of merely conclusory pleading, the complaint states that "Defendants face a substantial likelihood of being held liable for breaching their fiduciary duties." This allegation apparently attempts to cast doubt on the board's current ability to respond disinterestedly or independently to a demand (a claim under Rales) by pleading that the directors face a substantial likelihood of personal liability for decisions that breached their duty of care to exercise business judgment (claims under Aronson's second prong). But the conclusory allegation is supported by no particular detail of either.

The complaint does not plead facts indicating that the directors were personally involved in creating or disseminating the relevant marketing materials. Nor does it allege facts showing that the directors hid from investors the trouble that this

---

[2] Our further references to "defendants" or "directors" do not include the one assumed to be interested.

marketing had created; indeed, as the reproduced sections of Abiomed's SEC filings make clear, the company was not shy in disclosing its exposure to liability. Instead, Bryceland's complaint challenges the directors' (presumed) approval of press releases, issued during the intervals between the SEC filings, that reported favorable financial facts. But she pleads no particular basis to question the accuracy of these facts. At most, her conclusion seems to assume that it was misleading for Abiomed to issue these releases without an accompanying reminder about the ongoing FDA investigation that had previously been disclosed publicly through the SEC filings. Bryceland directs us to no authority, and we have found none, supporting the proposition that after a corporation discloses negative information, that information must also accompany subsequently released financial statements.

In sum, we see in this narrative no particular facts that, as required under <u>Aronson</u>'s second prong, cast doubt on whether the directors exercised sound business judgment at any point including the approval of the press releases. As previously noted, the lack of particular facts evidencing a potential breach of the duty of care and likelihood of ensuing liability consequently disarms any <u>Rales</u> claim that defendants could not disinterestedly or independently respond to a demand at the time suit was filed.

-11-

Bryceland's complaint, to be sure, lists other supposed reasons for questioning the directors' disinterest or independence, and, although they are alleged with greater particularity, their substance fails to cast the requisite doubt on the capacity or intention of any director, whether at the moment a demand would have been made or at the time of an antecedent business decision. Thus, the complaint contends that, "to bring this suit, all of the Company's directors would be forced to sue themselves." But under Delaware law, a director is not rendered interested simply by being named a defendant in an action. See Aronson, 473 A.2d at 818. Were the law otherwise, every derivative suit would qualify for futility on this basis alone, leaving the demand requirement a hollow one. See id.

The complaint also reveals in detail that all of the directors hold financial interests in Abiomed and receive compensation from the company. One defendant's financial interest derives not only from his current directorship, but also from his prior employment as a consultant to the company. But under Delaware law, compensation is by itself insufficient to render a director interested. See Grobow v. Perot, 539 A.2d 180, 188 (Del. 1988), overruled on other grounds by Brehm, 746 A.2d 244. While a director may cease to be disinterested and face temptation to act outside of loyal business judgment if her financial stake becomes unaligned with the shareholders', see Rales, 634 A.2d at 936, that

-12-

did not occur here, where the directors' financial interests are said to comprise stock and stock options.

In addition, the complaint alleges a lack of disinterest and independence on the part of several directors because they serve together on the boards of other corporations, none of which was involved in the events giving rise to this action. This particular fact, however, says nothing about the directors' ability or intention to discharge their duty of loyalty to Abiomed. Cf. In re Dow Chem. Co. Derivative Litig., Civil Action No. 4349-CC, 2010 WL 66769, at *9 (Del. Ch. Jan. 11, 2010) ("That directors of one company are also colleagues at another institution does not mean that they will not or cannot exercise their own business judgment with regard to the disputed transaction.").

As yet another try, though not raised in the complaint, Bryceland's opposition to the motion to dismiss argues that three of the directors lack disinterest or independence because of their service on Abiomed's audit committee. The insinuation presumably is that, given their familiarity with Abiomed's finances, these directors had especial reason to know of a tendency to mislead in the interim press releases. But under Delaware law, membership on an audit committee is not taken, on its own, to imply directors' knowledge of or participation in corporate wrongdoing. See Wood, 953 A.2d 142-43. And in any case, as we said before, Bryceland has given us no reason to question either the accuracy of the

financials as publicized, or their significance in light of the prior public disclosure of the FDA inquiry.

Finally, Bryceland takes the position that even if each of her allegations standing alone may be inadequate to meet <u>Aronson</u> or <u>Rales</u>, collectively they suffice. But the series of general allegations here do not become particular by amalgamation, and the legally irrelevant facts are no more relevant when grouped together. To the contrary, to the extent that the complaint reveals anything about the directors' mental states or conduct, it portrays a company that disclosed its exposure to liability as it responded to a charge of unlawful behavior.

The order of dismissal is **AFFIRMED**.