[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12015
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-03379-ODE

GRAPHIC PACKAGING HOLDING COMPANY,

Plaintiff-Counter-Defendant-
Appellant,

versus

STEPHEN M. HUMPHREY,

Defendant-Counter-Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 16, 2010)

Before BARKETT, HULL and COX, Circuit Judges.

PER CURIAM:

Graphic Packaging Holding Company ("Graphic Packaging") paid Stephen M.

Humphrey $1,208,392.55 for Restricted Stock Units ("RSUs") after he retired from

the company. Graphic Packaging claims that it overpaid Humphrey, and seeks to recover the amount of the alleged overpayment of $541,575.08 based on theories of money had and received and, alternatively, unjust enrichment. Graphic Packaging also asserts a claim for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

The issue of overpayment hinges on whether Graphic Packaging made a mistake by valuing the RSUs on the date of Humphrey's retirement rather than on the date the RSUs became payable. In ruling on the parties' cross-motions for summary judgment, the district court concluded that Graphic Packaging failed to produce sufficient evidence showing that valuing the RSUs on the date of Humphrey's retirement was a mistake. Accordingly, the district court denied Graphic Packaging's motion for summary judgment and granted Humphrey's motion for summary judgment. The district court also concluded that Graphic Packaging was not entitled to attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11. After review, we affirm the judgment of the district court.

## I. Background

A.    The 2004 Stock and Incentive Compensation Plan and Humphrey's Restricted Stock Units

Stephen M. Humphrey served as the President and Chief Executive Officer of Graphic Packaging Corporation or one of its corporate predecessors from 1997

through 2006, and served as its Vice Chairman in 2007.[1] In 2004, the shareholders of Graphic Packaging approved the 2004 Stock and Incentive Compensation Plan (the "Stock Plan"). This plan, which is not covered by ERISA, provides for the award of various types of stock incentives for eligible employees, including Restricted Stock Units ("RSUs"). Humphrey earned participation rights in the Stock Plan during his career. The Stock Plan provides that actual awards of RSUs are to be made in subsequent Award Agreements.

Humphrey received four Award Agreements throughout his career, and the material terms of the agreements are the same. Through these four Award Agreements, Humphrey received a total grant of 1,158,186 RSUs. Each of the four Award Agreements provided that the RSUs were to be paid out to Humphrey one-half in cash and one-half in Graphic Packaging common stock. The parties agree that each RSU is intended to be the value equivalent of one share of stock. This appeal concerns when the RSUs should be valued for the cash portion of Humphrey's RSU award.

---

[1] Graphic Packaging Corporation was the publicly-traded predecessor of Plaintiff Graphic Packaging Holding Company. As the result of a merger with Altivity Inc. in March 2008, Graphic Packaging Corporation became a wholly-owned subsidiary of Graphic Packaging Holding Company.

When Humphrey retired on December 31, 2007, all of his RSUs had vested. Although all of Humphrey's RSUs were vested on the date of his retirement, the four Award Agreements provide that the vested benefits do not become payable until the expiration of the "Mandatary Holding Period." The expiration of the Mandatory Holding Period could occur upon one of several different events, including the participant's retirement. The Award Agreements also provide, however, that if a participant is a "key employee" under Internal Revenue Code § 409A (26 U.S.C. § 409A), the Mandatary Holding Period extends for six additional months beyond the date of retirement. Humphrey was a § 409A "key employee," so the Mandatory Holding Period did not expire–and the RSUs thus did not become payable–until June 30, 2008. The parties agree that the Stock Plan and the Award Agreements are silent as to whether the value of the RSU distribution should be determined at the conclusion of § 409A's Mandatory Holding Period, or at another time–specifically, on the date of Humphrey's retirement. Because each RSU is the equivalent of one share of the company's stock, the question in this case is whether the stock should be valued on the date of retirement (December 31, 2007) or the date the stock became payable (June 30, 2008).

B.    Graphic Packaging's Past Practice Regarding RSU Payouts Under the Stock Plan

Humphrey's retirement on December 31, 2007, marked the first time that Graphic Packaging imposed the six-month holding period mandated by § 409A following a key employee's retirement.  As a result, there is no historical practice that speaks directly to the proper valuation date for RSUs when a § 409A holding period is imposed.  Nonetheless, both parties cite Graphic Packaging's historical practice regarding the valuation of RSUs to support their particular valuation date.  Graphic Packaging points out that in all prior instances the RSUs were valued on the date they became payable, and Humphrey points out that in all prior instances the RSUs were valued on the date of retirement.   Without the six-month holding period mandated by § 409A, both claims are true because the date of retirement and the date the RSUs become payable are the same date.  The only reason these events would happen on different dates is if the § 409A holding period was applied.

C.    Humphrey's Alleged Overpayment

A somewhat elaborate series of events preceded the payment of benefits in this case.  Shortly after Humphrey's effective date of retirement, on January 9, 2008, Graphic Packaging's Director of Compensation Kevin R. Wolff sent Humphrey a letter explaining the impending payout of his RSUs.  The letter stated that "all vesting

5

restrictions lapsed and all holding periods expired on the date of your Retirement," and the value of Humphrey's RSU award was to be determined based upon the closing stock price of the company's common stock as of December 31, 2007, which was $3.69 per share. (R.2-40, Ex. 7 at 8.) Wolff and his staff failed to take account of the fact that Humphrey was a key employee under § 409A, and that the payout of his RSUs would therefore need to be delayed by six months.

The next day Graphic Packaging's Senior Vice President of Human Resources Wayne E. Juby sent a second letter to Humphrey. Like the previous letter, the letter indicated that Humprey's RSUs would be valued as of the date of his retirement on December 31, 2007, and the RSUs would be deposited in Humphrey's bank account by January 15, 2008.

Shortly after Juby sent the letter to Humphrey, the Graphic Packaging Legal Department brought to Wolff's attention that the payout of Humphrey's RSUs would need to be delayed for six months because of the requirements of § 409A and the RSU Award Agreements. Wolff telephoned Humphrey and told him that his award was subject to a six-month holding period beyond his retirement date due to § 409A because he was a "key employee." Wolff did not, however, tell Humphrey anything about recalculating the value of the RSUs.

Wolff sent Humphrey a third letter on June 24, 2008. This letter again confirmed that Humphrey's RSUs would be valued as of the date of his retirement on December 31, 2007, and stated that that the money would be direct deposited by June 30, 2008, which was the end of the six-month holding period.

On June 30, 2008, Graphic Packaging paid Humphrey $1,208,392.55 for the cash portion of his RSUs. This figure was based on valuing the RSUs as of Humphrey's date of retirement–December 31, 2007. The price of Graphic Packaging's common stock on this date was $3.69 per share.

Several weeks after Graphic Packaging deposited Humphrey's cash benefits into his bank account, the Graphic Packaging Legal Department questioned the valuation date used to determine Humphrey's RSU payout. The Legal Department took the position that the proper valuation date for Humphrey's RSUs was the date of distribution (June 30, 2008) rather that the date of retirement (December 31, 2007). Because the price of the stock had dropped to $2.02 per share on June 30, 2008, the Legal Department concluded that Humphrey had been overpaid by $541,575.08.

Wolff notified Humphrey of the alleged overpayment by telephone on July 22, 2008, and two days later sent Humphrey a letter stating that he had been overpaid by $541,575.08 due to an "administrative error." The letter stated that the amount of cash should have been determined based on the value of Graphic Packaging's

common stock on June 30, 2008, which was $2.02 per share. The letter demanded repayment of the $541,575.08.

Humphrey declined to refund the money. After the parties failed to resolve the proper valuation date, Graphic Packaging submitted the issue to the Compensation and Benefits Committee of the Graphic Packaging Board of Directors (the "Compensation Committee") for a final determination of the proper valuation date for Humphrey's RSU distribution. The Stock Plan provides that the Compensation Committee "shall be responsible for administering the Plan" and that "[a]ll actions taken and all interpretations and determinations made by the Committee shall be final and binding upon Participants, the Company, and all other interested individuals." (R.2-40, Ex. 5 at 17.) Humphrey's four Award Agreements contain similar grants of authority.

Graphic Packaging notified Humphrey that the Compensation Committee would be resolving the valuation issue and invited him to submit any additional documents or information he wanted the Committee to consider. Prior to the Committee's meeting, the three Committee members received a collection of documents that included a memorandum outlining the pertinent facts and issues, the relevant agreements, and the correspondence between the Company and Humphrey (or their respective counsel) regarding the dispute. On September 16, 2008, the

8

Committee met and received a presentation from Graphic Packaging's outside and in-house counsel regarding the dispute. The Committee determined that the proper valuation date was June 30, 2008. Immediately after this meeting, Graphic Packaging informed Humphrey of the Committee's decision. Humphrey again declined to return the $541,575.08.

## II. Procedural History

On September 17, 2008, Graphic Packaging filed this lawsuit in Georgia state court, seeking to recover the amount of the alleged overpayment of $541,575.08 based on theories of money had and received and, alternatively, unjust enrichment. Graphic Packaging also asserted a claim for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

Humphrey removed the case to federal court. In his Answer, he asserted a counterclaim against Graphic Packaging for breach of contract in connection with Graphic Packaging's payout of the stock portion of his RSUs. Humphrey also asserted a counterclaim for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

The parties filed cross-motions for summary judgment that the district court granted in part and denied in part. The district court denied Graphic Packaging's motion for summary judgment with respect to its claims against Humphrey. The

district court granted Humphrey's motion for summary judgment with respect to Graphic Packaging's claims against him and dismissed these claims. With respect to Humphrey's counterclaims, the district court denied Humphrey's motion for summary judgment, granted Graphic Packaging's motion, and dismissed the counterclaims. The district court entered final judgment and ordered that each party bear its own costs. Graphic Packaging filed a timely Notice of Appeal. Humphrey did not appeal the dismissal of his counterclaims.

## III. Issues on Appeal

Graphic Packaging raises the following issues on appeal: (1) whether the district court erred in concluding that Graphic Packaging failed to produce sufficient evidence showing that the company's valuation of Humphrey's RSU's on the date of his retirement was mistaken;[2] and (2) whether the district court erred in concluding that Graphic Packaging was not entitled to attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

---

[2] The district court denied Graphic Packaging's motion for summary judgment and granted Humphrey's motion for summary judgment on the ground that Graphic Packaging failed to submit evidence showing that it made a mistake by valuing Humphrey's RSUs as of the date of his retirement. Because we ultimately affirm on this basis, both motions are discussed together.

## IV. Discussion

### A. Money had and received / unjust enrichment

An action for money had and received is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another. *Gulf Life Ins. Co. v. Folsom*, 349 S.E.2d 368, 370-71 (Ga. 1986). Recovery in such an action is authorized against one who holds the money of another that he ought in equity and good conscience refund. *Time Ins. Co. v. Fulton-DeKalb Hosp. Auth.*, 438 S.E.2d 149, 150-51 (Ga. Ct. App. 1993) (quotations and citations omitted). A plaintiff prevails on an action for money had and received where (1) a payment was mistakenly made as a result of the plaintiff's lack of diligence and (2) the party receiving payment would not be prejudiced by refunding the payment–subject to a weighing of the equities between the parties. *Folsom*, 349 S.E.2d at 373. Claims for unjust enrichment brought in an attempt to recover a mistaken overpayment are analyzed by Georgia courts under the same framework as a claim for money had and received. *See D & H Constr. Co. v. City of Woodstock*, 643 S.E.2d 826, 830 (Ga. Ct. App. 2007).

The district court denied summary judgment to Graphic Packaging and granted summary judgment to Humphrey on Graphic Packaging's claims for money had and received and unjust enrichment because it found that Graphic Packaging could not

show that it made a mistake by valuing the RSUs as of the date of Humphrey's retirement. Graphic Packaging contends that the district court erred in reaching this conclusion in the following ways: (1) by failing to defer to the determination of the Compensation Committee regarding the appropriate valuation date; (2) by rejecting and misconstruing Kevin Wolff's undisputed testimony regarding the events leading to the alleged overpayment; and (3) by misinterpreting Graphic Packaging's past practice regarding RSU valuation. We address each contention in turn.

Graphic Packaging first argues that the district court erred by failing to give proper deference to the Compensation Committee's determination that Humphrey's RSUs should have been valued as of the date they became payable (June 30, 2008). According to Graphic Packaging, this deference is mandated by the language of the Stock Plan and Award Agreements and by Delaware law.[3]

The Stock Plan and Award Agreements do not address the appropriate valuation date in the event RSUs vest and are paid out on different dates, as in Humphrey's case. The documents do, however, give the Compensation Committee "full and exclusive discretionary authority" to interpret the Stock Plan and Award

---

[3] The Stock Plan and the Award Agreements provide that they are to be interpreted in accordance with Delaware law. Graphic Packaging claims that Delaware law governs the interpretation of the Stock Plan and Award Agreements, and Humphrey does not dispute this contention. We therefore assume without deciding that Delaware law is the proper choice of law in interpreting the relevant documents.

Agreements, and provide that the determinations of the Committee are "final and binding." (R.2-40, Ex. 5 at 17.) Delaware law, moreover, requires courts to give deference to a committee that is granted interpretive and decision-making authority under a corporate compensation plan. *See, e.g., JPMorgan Chase & Co. v. Pierce*, 517 F. Supp. 2d 954, 958 (E.D. Mich 2007) (quoting *Schwartz v. Century Circuit, Inc.*, 163 A.2d 793, 796 (Del. Ch. 1960)) (applying Delaware law and explaining that "[w]here a contract vests a corporate administrative committee with the authority to make 'binding, final and conclusive' decisions regarding an employee's eligibility under a corporate compensation plan, a court should accept the committee's decision as 'conclusive in the absence of fraud, bad faith and the like.'"); *Lieberman v. Becker*, 155 A.2d 596, 600 (Del. 1959) ("We must assume that the committee of directors charged with the administration of this plan will do so in the good faith exercise of their considered business judgment. . . . A decision by responsible businessmen reached after careful consideration . . . , without bad faith or fraud, is entitled to weighty consideration by the courts.").

Based on the Compensation Committee's authority to interpret the Stock Plan and Award Agreements and the deference afforded to corporate compensation committees under Delaware law, Graphic Packaging contends that analysis of the Committee's decision should be limited to assessing whether it was tainted by bad

13

faith or fraud, and, in the absence of both, Delaware law requires deferring to the Committee's determination that Humphrey was overpaid.

We cannot agree. In this case, Graphic Packaging has the burden to produce evidence showing that it made a mistake when it valued and paid Humphrey's RSUs based on the date of his retirement. Graphic Packaging cannot meet this burden by simply pointing to the Compensation Committee's ultimate conclusion that Humphrey's RSUs should be valued on the date they became payable. Rather, Graphic Packaging must produce evidence showing why one valuation date is correct and the other date is incorrect. Further, the Delaware cases do not support Graphic Packaging's argument because those cases did not concern mistaken payments whereby the corporate employer has the burden of proving that a payment was mistaken in order to be entitled to equitable relief. Thus, the district court was correct in analyzing the basis for the Compensation Committee's conclusion in order to determine whether Graphic Packaging met its burden of submitting evidence of a mistaken payment.

Graphic Packaging also argues that the evidence supporting the Compensation Committee's determination shows that a mistaken payment was made. We disagree. Graphic Packaging has pointed to no specific document or testimony that shows why valuing the RSUs on the date they became payable is correct and valuing the RSUs

14

on the date of retirement is incorrect. While one committee member testified that past practice supported valuing the RSUs on the date they became payable, there was no past practice of valuing RSUs in the context of a § 409A key employee, like Humphrey.

Graphic Packaging next argues that the testimony of Director of Compensation Kevin Wolff provides sufficient evidence that the company's valuation of Humphrey's RSUs as of the date of his retirement was mistaken. Graphic Packaging contends that the district court refused to credit Wolff's testimony, and this refusal amounted to an impermissible credibility determination. We disagree.

The district court correctly concluded that Wolff's testimony did not establish that Graphic Packaging over-valued Humphrey's RSUs by valuing them as of the date of Humphrey's retirement (December 31, 2007). While Wolff testified that valuing the RSUs as of the date of retirement was a "mistake," he did not explain the basis for this conclusion. While Wolff testified that valuing the RSUs as of the date of retirement was not in line with the company's understanding of its past practice in interpreting the Stock Plan, Graphic Packaging had never previously addressed how RSUs should be valued in the context of a § 409A key employee, like Humphrey. We agree with the district court's conclusion that valuing Humphrey's RSUs as of the date of his retirement was a reasonable interpretation of the relevant agreements that

was confirmed repeatedly through numerous letters and, ultimately, by paying Humphrey accordingly.

Graphic Packaging also argues that the district court erred in its assessment of the Company's past practice regarding the valuation of RSUs. According to Graphic Packaging, prior to Humphrey's retirement all RSUs paid out under the Stock Plan were valued on the date the RSUs became payable regardless of vesting date.

We agree with the district court that Graphic Packaging's past practice does not show that a mistake was made in valuing Humphrey's RSUs. As the district court correctly noted, in every instance prior to Humphrey's retirement, the date of retirement was the same date as the date the RSUs became payable under the Award Agreements because the only reason the dates would differ is if the § 409A holding period was imposed. Since there is no indication in the record that a § 409A holding period had ever been imposed prior to Humphrey's retirement, there is no historical practice that could show that Humphrey's RSU valuation was miscalculated.

We conclude by noting, as the district court did, that Graphic Packaging's arguments are notable for what they do not say. First, neither the Stock Plan nor the Award Agreements provide that Humphrey's RSUs should have been valued on the date the § 409A holding period expired. Although the § 409A holding period may postpone the distribution of the payment, there is no indication in the Award

16

Agreements that it operates to alter the value of Humphrey's vested RSUs. Second, nothing in § 409A suggests that the proper valuation date should be at the end of the six-month holding period. Since it is clear that if § 409A had not been applied to delay Humphrey's RSU distribution the valuation date under the relevant agreements would have been the date of Humphrey's retirement, there is no basis for the conclusion that § 409A somehow operates to change the valuation date.

Accordingly, the district court correctly determined that Graphic Packaging failed to submit evidence showing that its valuation of Humphrey's RSUs on the date of his retirement was a mistake.

B. Attorneys' Fees

Graphic Packaging argues that the district court erred in granting Humphrey's motion for summary judgment on Graphic Packaging's claim for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.[4] In order to prevail on such a claim, a plaintiff must first prevail on its underlying claims. *Ellis v. Gallof*, 469 S.E.2d 288, 289 (Ga. Ct. App. 1996). Graphic Packaging has not done so in this case, and we thus affirm the district court's grant of summary judgment in favor of Humphrey on Graphic Packaging's claim for attorneys' fees and expenses.

---

[4] Graphic Packaging has withdrawn its appeal with respect to its motion for summary judgment on its claim for attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

17

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.