# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN SOLAK, derivatively on behalf of ULTRAGENYX PHARMACEUTICAL INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2018-0810-KSJM |
| DANIEL G. WELCH, EMIL D. KAKKIS, M.D., Ph.D., WILLIAM ALISKI, DEBORAH DUNSIRE, M.D., LARS EKMAN, M.D., Ph.D., MATTHEW K. FUST, MICHAEL NARACHI and CLAY B. SIEGALL, Ph.D., | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| ULTRAGENYX PHARMACEUTICAL INC., a Delaware corporation, | ) ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: August 1, 2019
Date Decided: October 30, 2019

Blake A. Bennett, COOCH AND TAYLOR, P.A., Wilmington, Delaware; Jeffrey M. Norton, NEWMAN FERRARA LLP, New York, New York; Werner R. Kranenburg, KRANENBURG, London, United Kingdom; *Counsel for Plaintiff John Solak.*

Edward B. Micheletti, Lilianna Anh P. Townsend, Mary T. Reale, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Counsel for*

*Defendants Ultragenyx Pharmaceutical Inc., Daniel G. Welch, Emil D. Kakkis, William Aliski, Deborah Dunsire, Lars Ekman, Matthew K. Fust, Michael Narachi, and Clay B. Siegall.*

**McCORMICK, V.C.**

As interpreted by the Delaware Supreme Court in *Spiegel v. Buntrock*,[1] Court of Chancery Rule 23.1 gives a stockholder wishing to file a derivative lawsuit two mutually exclusive options. The stockholder may either make a pre-suit demand on the board or plead with particularity the reasons it would have been futile to do so. If a stockholder elects to make a pre-suit demand, then the stockholder may not allege that demand would have been futile in a subsequent complaint concerning the subject matter of the demand. Rather, the stockholder is limited to making the more difficult claim that the board wrongfully refused the demand. Making a pre-suit demand, therefore, carries significant downsides affecting the viability of a derivative claim.

The parties in this case dispute whether a pre-suit communication constitutes a pre-suit demand for purposes of Rule 23.1. Before commencing this litigation, the plaintiff-stockholder sent a letter requesting that the defendant-company's board of directors take remedial action to address allegedly excessive non-employee director compensation. This lawsuit ensued after the board rejected the letter's request. The plaintiff portrays the letter as no more than an informal, good faith attempt to educate the board and encourage it to make changes to the company's compensation policies. He argues that demand futility is the appropriate standard and that the complaint demonstrates that demand is excused. The defendants have moved to dismiss the

[1] 571 A.2d 767, 772–73 (Del. 1990).

1

complaint under Rule 23.1. They argue that the letter constitutes a pre-suit demand and that the plaintiff failed to plead wrongful demand refusal.

Revealing the proverbial wolf in sheep's clothing, this decision finds that what the plaintiff describes as a harmless letter seeking prospective board action is something with far more legal bite—a pre-suit demand. Because the plaintiff fails to allege wrongful demand refusal, the action is dismissed.

## I.    FACTUAL BACKGROUND

The facts are drawn from the Complaint,[2] documents it incorporates by reference, and relevant pre-suit communications.[3]

Plaintiff John Solak ("Plaintiff") is a current stockholder of Ultragenyx Pharmaceutical Inc. ("Ultragenyx" or the "Company"), a biopharmaceutical company incorporated under Delaware law and headquartered in Novato, California. In June 2018, Plaintiff's counsel sent a letter on his behalf (the "Letter") addressed to the Ultragenyx Board of Directors (the "Board").[4]

---

[2] C.A. No. 2018-0810-KSJM, Docket ("Dkt.") 1, Verified Shareholder Derivative Compl. for Breach of Fiduciary Duty, Unjust Enrichment, and Waste of Corporate Assets ("Compl.").

[3] *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *2 & n.3 (Del. Ch. Feb. 12, 2019) (citing authorities for the proposition that the Court may consider pre-suit communications for Rule 23.1 purposes); *see, e.g.*, *Yaw v. Talley*, 1994 WL 89019, at *7–8 (Del. Ch. Mar. 2, 1994) (considering pre-suit communications).

[4] *See* Dkt. 18, Transmittal Aff. of Blake A. Bennett Ex. A ("Letter").

The Letter states that its purpose is "to suggest that the [Board] take corrective action to address excessive director compensation as well as compensation practices and policies pertaining to directors."[5] The Letter focuses on the Company's updated compensation policy disclosed in its Definitive Proxy Statement filed with the United States Securities and Exchange Commission on April 27, 2018 (the "Compensation Policy"), which "the Board approved" and in which all non-employee directors participate.[6]

According to the Letter, non-employee directors have been "compensated at an extraordinarily high level – averaging in excess of $400,000 per annum each since 2014" under the Compensation Policy.[7] The Letter compares the median compensation for non-employee directors at the "Top 200" companies in the S&P 500 against the median total compensation for non-employee directors at Ultragenyx, describing the latter as comparatively excessive.[8]

---

[5] *Id.* at 1.

[6] *Id.* ("Under the Compensation Policy, the compensation of each non-employee director consists of: (i) a $50,000 annual cash retainer; (ii) an annual option grant to purchase up to 3,750 shares of the Company's common stock; and (iii) an annual grant of 1,875 restricted stock units. Additionally, non-employee directors acting as Chair of the Board or of certain Board committees are eligible for additional fees of up to $30,000 per director and other members of committees receive fees of up to $10,000 per committee. In addition, newly appointed non-employee directors will receive an option grant to purchase up to 15,000 shares of the Company's common stock.").

[7] *Id.*

[8] *Id.* at 2.

3

The Letter references *In re Investors Bancorp, Inc. Stockholder Litigation*, in which the Delaware Supreme Court revived claims challenging director compensation decisions a board made pursuant to a stockholder-approved, discretionary equity incentive plan.[9] In reversing the Court of Chancery decision dismissing those claims, the Delaware Supreme Court held: "[W]hen it comes to the discretion directors exercise following stockholder approval of an equity incentive plan, ratification cannot be used to foreclose the Court of Chancery from reviewing those further discretionary actions when a breach of fiduciary duty claim has been properly alleged."[10] Citing *Investors Bancorp*, the Letter states: "The Compensation Policy lacks any meaningful limitations with regard to cash and equity awards, allows for too much discretion by the Board, and . . . is not subject to shareholder approval."[11] The Letter then warns: "The Company is more susceptible than ever to shareholder challenges unless it revises or amends its director compensation practices and policies."[12]

The Letter concludes by "suggesting" that the Board "take[] immediate remedial measures to address these issues, including, but not limited to, reducing retainer fees, reducing the awards of options and restricted stock units, moving to

---

[9] 177 A.3d 1208 (Del. 2017).

[10] *Id.* at 1222.

[11] Letter at 2.

[12] *Id.*

full-value equity grants, adopting mandatory stock-ownership guidelines, and setting meaningful limits or targets for overall compensation."[13]  The Letter does not expressly request that the Board initiate any litigation, but it states that if the Board did not respond within thirty days, Plaintiff would consider "all available shareholder remedies."[14]

The Letter includes the following footnote:

> Please be advised that nothing contained herein shall be construed as a pre-suit litigation demand under Delaware Chancery Rule 23.1.  This letter is intended only as a good-faith attempt to encourage corrective action by the Board.  We do not seek or expect the Board to initiate any legal action against its members.  Further, any rights and/or remedies our client or any other Ultragenyx shareholder may have are specifically reserved and nothing contained herein shall be deemed a waiver of those rights and/or remedies.[15]

In October 2018, the Board responded to the Letter through counsel (the "Response").[16]  The Response first states that the Board viewed Plaintiff's Letter as a demand pursuant to Rule 23.1.[17]  It then explains that the Board conducted an investigation with the assistance of counsel, which included a review of public and private documents, as well as interviews with the Chairman of the Compensation

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 1 n.1.

[16] Dkt. 18, Transmittal Aff. of Blake A. Bennett Ex. B ("Response").

[17] *Id.* at 2–3.

Committee and the Compensation Committee's independent compensation consultant.[18] The Response also describes the approach used to set Ultragenyx's compensation policies and explains that "the Board unanimously resolved that it would be in the best interests of the Company to not authorize commencement of a civil action or further changes to the Compensation Policy in response to the Demand."[19]

Plaintiff commenced this derivative action on November 7, 2018, asserting claims stemming from the Board's allegedly excessive non-employee director compensation practices. The Complaint names as defendants the eight individual directors who served on the Board at the time the Complaint was filed (the "Defendants"). The Complaint asserts three causes of action against Defendants: breach of fiduciary duty, unjust enrichment, and corporate waste. Defendants moved to dismiss the Complaint on December 26, 2018. The parties fully briefed the motion by April 8, 2019,[20] and the Court heard oral argument on August 1, 2019.

---

[18] *Id.* at 3.

[19] *Id.* at 6.

[20] Dkt. 17, Defs.' Opening Br. in Supp. of Their Mots. to Dismiss the Compl. ("Defs.' Opening Br."); Dkt. 18, Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss the Verified Shareholder Derivative Compl. ("Pl.'s Answering Br."); Dkt. 19, Defs.' Reply Br. in Further Supp. of Their Mots. to Dismiss the Compl. ("Defs.' Reply Br.").

## II. LEGAL ANALYSIS

Defendants have moved to dismiss the Complaint pursuant to Rule 23.1(a), which derives from the bedrock principle that directors, rather than stockholders, manage the business and affairs of the corporation.[21] "By its very nature the derivative action impinges on the managerial freedom of directors," whose authority includes decisions to pursue or refrain from pursuing litigation on behalf of the corporation.[22]

As part of this board-centric model, Rule 23.1 requires that a stockholder wishing to bring a derivative action first demand that the board of directors take action.[23] If a stockholder chooses not to make pre-suit demand, the stockholder must plead with particularity the reasons it would have been futile to present the matter to the board such that pre-suit demand should be excused.[24] This requirement "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits."[25]

---

[21] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 *Del. C.* § 141(a)). Defendants also moved to dismiss the Complaint pursuant to Court of Chancery Rule 12(b)(6). Because the Court grants Defendants' motion to dismiss under Rule 23.1, this decision does not reach the Rule 12(b)(6) analysis.

[22] *Aronson*, 473 A.2d at 811; *see also Spiegel*, 571 A.2d at 772–73.

[23] Ct. Ch. R. 23.1; *see also Spiegel*, 571 A.2d at 773.

[24] Ct. Ch. R. 23.1; *see also Spiegel*, 571 A.2d at 774; *Klein v. H.I.G. Capital, L.L.C.*, 2018 WL 6719717, at *5 (Del. Ch. Dec. 19, 2018); *Zucker v. Hassell*, 2016 WL 7011351, at *1 (Del. Ch. Nov. 30, 2016).

[25] *Aronson*, 473 A.2d at 811–12.

Of the two potential routes presented by Rule 23.1—pleading demand futility with particularity or making pre-suit demand—the former is a steep road, but the latter is "steeper yet."[26] The Delaware Supreme Court steepened this incline in *Spiegel* by holding that a stockholder who makes pre-suit demand "tacitly concedes" that the board was able to properly consider that demand.[27] The board's affirmative decision to refuse the demand, therefore, is subject to the business judgment rule.[28]

A stockholder's options under Rule 23.1 are mutually exclusive. As explained in *Spiegel*, after making pre-suit demand, a stockholder plaintiff may not pursue claims challenging the subject matter of that demand.[29] Rather, the stockholder is

---

[26] *Hassell*, 2016 WL 7011351, at *1.

[27] *Spiegel*, 571 A.2d at 777 ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."). *But cf. Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) (suggesting that, prior to *Spiegel*, the option of arguing demand excusal served only to "save[] the plaintiff the expense and delay of making a futile demand resulting in a probable tainted exercise of that authority in a refusal by the board in giving control of litigation to the opposing side").

[28] *Busch ex rel. Richardson Elecs., Ltd. v. Richardson*, 2018 WL 5970776, at *8 (Del. Ch. Nov. 14, 2018) ("[A] stockholder plaintiff who makes a demand 'concedes that the board had the requisite independence and disinterest to evaluate the demand objectively,' [and] the 'decision to refuse a plaintiff's demand is afforded the protection of the business judgment rule unless the plaintiff alleges particularized facts that raise a reasonable doubt as to whether the board's decision to refuse the demand was the product of valid business judgment.'" (quoting *Friedman v. Maffei*, 2016 WL 1555331, at *8 (Del. Ch. Apr. 13, 2016))).

[29] *Spiegel*, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused."); *Grimes v. Donald*, 673 A.2d 1207, 1218–19 (Del. 1996) ("The spent 'arrow' is the right to claim that demand is excused." (citing *id.* at 776)).

8

limited to a claim that the board wrongfully refused the demand.[30]  Put differently, a stockholder may not pursue demand refusal and demand excusal strategies simultaneously in order to "cover all the bases."[31]  The Delaware Supreme Court has broadly interpreted this limitation to apply to all derivative claims arising from the subject matter of the demand, even legal theories not expressly identified by the stockholder or considered by the board.[32]  In light of these principles, "a judicial determination that a plaintiff has made a demand carries with it significant legal consequences."[33]

In this case, the parties dispute whether Plaintiff, in fact, made a pre-suit demand on the Board.  Defendants construe the Letter as a pre-suit demand and argue that the demand refusal analysis applies.  Plaintiff responds that the Letter does not

---

[30] *Stotland v. GAF Corp.*, 469 A.2d 421, 422 (Del. 1983) ("[O]nce a demand has been made, absent a wrongful refusal, the stockholders' ability to initiate a derivative suit is terminated." (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784–86 (Del. 1981))).

[31] *Levit v. Shrontz*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992).

[32] *Grimes*, 673 A.2d at 1219 ("[P]laintiff may not bifurcate his theories relating to the same claim. . . . [Plaintiff's] demand letter conceded that demand was required for all legal theories arising out of the set of facts described in the demand letter.");  Deborah A. Demott & David F. Cavers, *Shareholder Derivative Actions: Law And Practice* § 5.10 (2018) ("[A] demand implicitly encompasses all legal theories or remedies arising out of the same set of circumstances.  Under this rule, there is no incentive to bifurcate or hold back legal theories, in the hope that demand might be excused on the unexpressed claim arising out of the same set of facts." (citing *id.*)).

[33] *Yaw*, 1994 WL 89019, at *6.

9

constitute a pre-suit demand and argues that the demand excusal analysis applies. This decision first confronts this gating issue before applying the relevant standard.

### A. The Letter Constitutes a Pre-Suit Demand Under Rule 23.1.

The burden of demonstrating that a pre-suit stockholder communication qualifies as a demand under Rule 23.1 lies with the party asserting as much—here, Defendants.[34] There are no "'magic words' establishing that a communication is a demand."[35] Nor is there an "all-inclusive legal formula" serving such a purpose.[36] Rather, "[t]hat determination is essentially fact-driven."[37] In *Yaw*, then-Vice Chancellor (later Justice) Jacobs helpfully distilled a series of decisions to three criteria for determining whether a pre-suit communication constitutes a pre-suit demand.[38] Under *Yaw*, a pre-suit communication is a demand for purposes of Rule 23.1 if it provides "(i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf."[39]

---

[34] *Id.* at *8.

[35] *Khanna v. McMinn*, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006).

[36] *Yaw*, 1994 WL 89019, at *7.

[37] *Id.*

[38] *Id.*

[39] *Id.*

10

Plaintiff first argues that this Court need not review the substance of the Letter under *Yaw* because of the Letter's footnote disclaimer, which states: "nothing contained herein shall be construed as a pre-suit demand under Delaware Chancery Rule 23.1."[40] Vice Chancellor Glasscock has coined this argument the "Magritte defense," a term referencing a 1929 painting by surrealist artist René Magritte titled "The Treachery of Images."[41] That painting portrays a smoking pipe, but it bears the caption: "This is not a pipe."[42]

Plaintiff's footnote disclaimer does not obviate the Court's review of the Letter's substance for obvious reasons, namely that "Delaware law is quite strict as to the application of Chancery Rule 23.1."[43] As discussed above, Delaware law prohibits a stockholder from both making a demand and pleading demand futility "to, in essence, cover all the bases."[44] That prohibition would become a virtual nullity if a stockholder could avoid a judicial determination that pre-suit demand was

---

[40] Letter at 1 n.1.

[41] *See Dahle v. Pope*, C.A. No. 2019-0136-SG, Dkt. 21 at 2 (Del. Ch. Oct. 17, 2019).

[42] René Magritte, *La Trahison des images (Ceci n'est pas une pipe)* (1929). "Magritte's word-image paintings are treatises on the impossibility of reconciling words, images, and objects. La Trahison des images challenges the linguistic convention of identifying an image of something as the thing itself." *The Treachery of Images (This is Not a Pipe) (La trahison des images [Ceci n'est pas une pipe])*, L.A. County Museum of Art, https://collections.lacma.org/node/239578 (last visited Oct. 29, 2019).

[43] *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009) (quoting *Szeto v. Schiffer*, 1993 WL 513229, at *4 (Del. Ch. Nov. 24, 1993)).

[44] *Levit*, 1992 WL 81228, at *5.

11

made by simply stating "this is not a demand" in his pre-suit communication. For this reason, the test for determining whether a pre-suit communication constitutes a demand under Rule 23.1 cannot look to the subjective intent of the sender.[45] Rather, in applying the three *Yaw* criteria, the Court must evaluate the substance of the communication objectively to determine whether it would place a recipient "on notice of possible wrongdoing" in a manner that would enable that person to take "corrective intracorporate action."[46]

Turning to an application of *Yaw* in this case, the parties' dispute concerns whether the Letter satisfies the third criterion, which requires that the communication identify the legal action the stockholder wants the board to take on the company's behalf.[47] Plaintiff's argument is straightforward: because the Letter does not expressly demand that Defendants commence litigation, it cannot be construed as a pre-suit litigation demand for purposes of Rule 23.1.[48]

---

[45] Nor should the subjective intent of the recipient inform the analysis. For example, in this case, the fact that the Board treated the Letter as a demand is not dispositive as to the question of whether the Letter constitutes a demand. A rule providing otherwise would permit a corporation to ensure a demand-refusal standard on any claims following a demand regardless of the nature of the stockholder communication.

[46] *Yaw*, 1994 WL 89019, at *7 (citing *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984)).

[47] Plaintiff does not meaningfully dispute that the Letter satisfies the first criterion by identifying the Board as the purported wrongdoer and the second criterion by identifying the Company's "extraordinarily high," "excessive," and "egregious" levels of compensation to non-employee directors as the purported wrongdoing. Letter at 1, 2.

[48] Pl.'s Answering Br. at 10.

Delaware law does not construe the third *Yaw* criterion as narrowly as Plaintiff suggests, and this Court has deemed pre-suit communications that do not expressly demand litigation sufficient to constitute pre-suit demand. On this point, two cases are instructive. In *In re Riverstone National, Inc. Stockholder Litigation*, the Court held that a pre-suit communication constituted demand even though it did not "specifically request that the board commence litigation" because it asked the board to transfer equity owned by the company's officers, directors, and employees back to the company itself.[49] The Court reasoned that by "clearly articulat[ing] the remedial action to be taken by the board," the letter met the third *Yaw* criterion.[50] Similarly, in *Herd v. Major Realty Corp.*, the Court considered two pre-suit communications: one demanding termination of a merger agreement and another demanding that the board postpone the stockholders' meeting at which the merger was to be considered.[51] The Court concluded that the letters "clearly demanded corporate action" sufficient to satisfy Rule 23.1, despite the fact that they did not demand that the board pursue litigation on behalf of the company.[52]

---

[49] C.A. No. 9796-VCG, Dkt. 258, Telephonic Partial Rulings of the Ct. on Defs.' Mot. for Summary J. at 9:19–10:17 (Del. Ch. Nov. 27, 2017) (TRANSCRIPT).

[50] *Id.* at 10:9–10.

[51] 1990 WL 212307, at *8 (Del. Ch. Dec. 21, 1990).

[52] *Id.*

Similar to the pre-suit communications in *Riverstone* and *Herd*, although the Letter avoids expressly demanding that the Board commence litigation, the Letter clearly articulates the need for "immediate remedial measures," proposes remedial action, and requests that the Board take such action.[53] The Letter further states that "the Company is more susceptible than ever to shareholder challenges unless it revises or amends its director compensation practices and policies," identifies the legal basis for such challenges, and warns that, absent a response from the Board within thirty days, Plaintiff would "consider all available shareholder remedies."[54] Although Plaintiff says "this is not a demand," these strong overtures of litigation very much make it look like one. Thus, the Letter satisfies the third criterion of *Yaw*.

Beyond a mechanical application of *Yaw*, numerous other observations inform this Court's conclusion that the Letter constitutes a pre-suit demand. For starters, the Letter reads like a complaint. In fact, the Complaint in this action is nearly a carbon copy of the Letter. Not only does the Complaint allege the same wrongdoing using similar verbiage as the Letter,[55] but it also adopts the Letter's method of

---

[53] Letter at 2 (requesting that the Company "reduc[e] retainer fees, reduc[e] the awards of options and restricted stock units, mov[e] to full-value equity grants, adopt[] mandatory stock-ownership guidelines, and set[] meaningful limits or targets for overall compensation. In addition, these remedial measures should be included in a new proposal that can be reviewed, considered, and approved by Ultragenyx shareholders at the Company's next annual meeting").

[54] *Id.*

[55] *Compare* Letter at 1 (alleging that the non-employee directors are compensated "at an extraordinarily high level), *and id.* at 2 (suggesting that the board set "meaningful limits"

14

illustrating the alleged wrongdoing by drawing comparisons between the Company's compensation levels and those of other companies.[56] The similarities between the Letter and the Complaint are relevant because a pre-suit demand is supposed to fulfill a notice function—notifying a board of the alleged wrongs to be corrected through litigation.[57] Thus, the more closely a complaint tracks the pre-suit communication in question, the more likely the communication will have provided the notice required of a pre-suit demand.[58] The similarities between the Letter and the Complaint in this case therefore weigh in favor of deeming the Letter a pre-suit demand.

---

for compensation), *with* Compl. ¶ 18 (alleging that non-employee directors' compensation is "extraordinarily high"), *and id.* ¶ 23 (alleging that "there is no meaningful limitation whatsoever as to Board compensation").

[56] *Compare* Letter at 2 ("By stark comparison, the median total compensation for non-employee directors at the 'Top 200' companies in the S&P 500 was $271,456."), *and id.* ("Ultragenyx is a mid-cap company, among which the median total compensation for non-employee directors ranges between $185,000 and $223,000."), *with* Compl. ¶ 16 (alleging that the Company's non-employee director compensation levels involved amounts "significantly higher than the average total director compensation for S&P 500 companies"), *and id.* ¶¶ 17–18 (explaining that Ultragenyx is "neither an S&P 500 constituent nor a large-cap company" and alleging that, "[i]n relation to its peers of comparable market value, the Company's average total non-employee director compensation stands at a level greater than *twice* the average").

[57] *Seibert v. Harper & Row, Publ'rs, Inc.*, 1984 WL 21874, at *3 (Del. Ch. Dec. 5, 1984).

[58] *Cf. Herd*, 1990 WL 212307, at *8 (finding that a pre-suit letter was not a demand because, while the plaintiff "clearly demanded corporate action . . . he did not demand that the directors take action to remedy the alleged corporate injury for which derivative relief [was ultimately] sought"); *Seibert*, 1984 WL 21874, at *3 (finding that a pre-suit letter was not a demand and, in so doing, emphasizing that two of the four areas of concern identified in the letter were not included as claims in the derivative litigation).

15

In the same vein, the remedial measures requested in the Letter support a determination that the Letter is a demand. The Letter seeks relief that would benefit Ultragenyx stockholders and the Company as a whole, rather than just Plaintiff personally.[59] And the Letter's requested remedial measures resemble therapeutic benefits commonly achieved in derivative lawsuits challenging non-employee director compensation.[60] Where a communication demands action that stockholders

---

[59] *Cf. Khanna*, 2006 WL 1388744, at *13 (holding that a letter was not pre-suit demand because it could not "fairly be read as an attempt to seek a remedy for the challenged transactions for the good of [the company] or its shareholders," but was rather seeking remedial action for the stockholder's personal benefit); *Yaw*, 1994 WL 89019, at *8 (holding that the letters were not pre-suit demand because the action the stockholder sought "would benefit [him] individually, but not the corporation or its shareholders as a group").

[60] *Compare* Letter at 2 (asking the Board to reduc[e] retainer fees, reduc[e] the awards of options and restricted stock units, mov[e] to full-value equity grants, adopt[] mandatory stock-ownership guidelines, . . . set[] meaningful limits or targets for overall compensation" and present the changes to Ultragenyx stockholders at the next annual meeting), *with Michaeli ex rel. Peregrine Pharm., Inc. v. King*, C.A. No. 8994-VCL (Del. Ch. July 27, 2017) (TRANSCRIPT) (Laster, V.C.) (approving settlement involving claims challenging non-employee director compensation and approving settlement terms that included a two-year cap on non-employee director compensation and the requirement that the company's compensation committee resolve to "observe" the annual compensation cap and submit changes to a stockholder vote), *Calma ex rel. Citrix Sys., Inc. v. Templeton*, C.A. No. 9579-CB (Del. Ch. Sept. 9, 2016) (TRANSCRIPT) (Bouchard, C.) (approving terms of settlement including limits on annual equity compensation grants for non-employee directors subjected to stockholder approval), *Espinoza ex rel. Facebook, Inc. v. Zuckerberg*, C.A. No. 9745-CB (Del. Ch. Mar. 30, 2016) (TRANSCRIPT) (approving settlement requiring formal stockholder approval of the company's annual compensation program for non-employee directors and implementing, for five years following approval of the settlement, a set of corporate governance reforms strengthening the compensation committee mandate and improving board decision-making processes concerning non-employee director compensation), *and Steinberg ex rel. Celgene Corp. v. Casey*, C.A. No. 10190-CB (Del. Ch. Dec. 9, 2015) (TRANSCRIPT) (Bouchard, C.) (approving settlement involving a cap on equity-based compensation and a strengthened mandate for the compensation committee, including an annual review of all non-employee director compensation and the engagement of an independent compensation consultant to advise

16

commonly achieve through derivative litigation challenging similar conduct, it is more likely that the communication will be construed as a demand for the purposes of Rule 23.1.

Warranting mention, Plaintiff makes one other argument based on another aspect of *Yaw*. Citing policy considerations, then-Vice Chancellor Jacobs directed that ambiguous stockholder communications "ought not to be considered a demand within the meaning of Rule 23.1."[61] He reasoned that "[t]o interpret an ambiguous communication as a demand would discourage a shareholder from bringing potential wrongdoing to the corporation's attention in a forum other than the courtroom, for fear that his position, should he later decide to sue derivatively, would procedurally

---

the compensation committee as to the amount and type of non-employee director compensation).

[61] *Yaw*, 1994 WL 89019, at *8.

17

be more difficult to support."[62] Plaintiff argues that there is ambiguity in the Letter and requests that the Court construe that ambiguity in his favor.[63]

Unique circumstances of this action, however, warrant a departure from the otherwise sound policy requiring this Court to construe ambiguity in favor of a stockholder. In *Solak v. Fundaro*, a New York state court held that Plaintiff's pre-suit communication to the board of another company in which he owned stock constituted a pre-suit demand.[64] In dismissing that lawsuit, the New York court observed that Plaintiff's request that the board take "all action necessary" to address allegedly excessive compensation satisfied the demand requirement because it necessarily included taking requisite legal action.[65] *Fundaro* involved not only the

---

[62] *Id.* In the quoted passage, Justice Jacobs pinpoints a tension in Delaware law that exists regardless of how this Court construes ambiguity when reviewing a pre-suit communication for purposes of Rule 23.1. Namely, the tacit concession doctrine set forth in *Spiegel*, coupled with the mutually exclusive nature of a stockholder's options under Rule 23.1, discourages a stockholder from bringing potential wrongdoing to the corporation's attention prior to initiating litigation. This disincentive stands in tension with statements repeated in Delaware case law describing that Rule 23.1 serves to encourage stockholders to pursue pre-suit intracorporate remedies. *See, e.g., Grimes*, 673 A.2d at 1216 ("The demand requirement serves a salutary purpose. First, by requiring exhaustion of intracorporate remedies, the demand requirement invokes a species of alternative dispute resolution procedure which might avoid litigation altogether."); *Spiegel*, 571 A.2d at 773 ("The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation . . . ."); *Aronson*, 473 A.2d at 811–12 ("[T]he demand requirement of . . . Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies . . . .").

[63] Pl.'s Answering Br. at 9–11.

[64] *Solak v. Fundaro*, Index No. 655205/2017, slip op. (N.Y. Sup. Ct. Mar. 19, 2018).

[65] *Id.* at 8.

18

same plaintiff as this case, but also the same New York law firm representing Plaintiff in this case. And the letter in *Fundaro* made allegations nearly identical to the Letter in this action.[66] The players in this litigation were thus aware of the risk involved in sending a pre-suit communication like the Letter.[67] Nonetheless, Plaintiff and his counsel attempted to dress down what had previously been held to be a demand instead of pleading demand futility.[68] The product of this tactical wordsmithing is not the sort of "ambiguity" warranting a plaintiff-friendly presumption.

## B. The Complaint Does Not Adequately Plead Wrongful Demand Refusal.

"[A] conscious decision by a board of directors to refrain from acting may be a valid exercise of business judgment," and where, as here, "'demand on a board has

---

[66] In crafting the Letter to Ultragenyx, Plaintiff merely removed from his stock form buzz-phrases like "breach of fiduciary duty" and reworded his "demand that the Board take all action necessary" into a request that "the Board consider[] taking immediate remedial measures." *Id.*; Letter at 2. Also, while the letter in *Fundaro* requested cancellation of already-awarded stock options, the Letter here requests everything short of an all-out clawback. *Fundaro*, slip op. at 8; Letter at 2.

[67] Plaintiff's counsel is also involved in similar litigation pending in this Court before Vice Chancellor Glasscock. *See Dahle*, C.A. No. 2019-0136-SG. As in this case, the complaint in *Dahle* states that the plaintiff, through counsel, had "declined to serve a litigation demand on the Board." *Compare id.*, Dkt. 1 ¶ 33, *with* Compl. ¶ 33. Like the defendants in this case, the defendants in *Dahle* moved to dismiss the complaint on the ground that the plaintiffs had, in fact, made pre-suit demand. *Dahle*, Dkt. 13 at 10–11. The pre-suit letter in *Dahle* uses the same language to communicate stockholder dissatisfaction with allegedly excessive non-employee director compensation and contains the same footnote "disclaimer" as the Letter in this case. *See id.*, Dkt. 13 Ex. 1, at 1.

[68] Pl.'s Answering Br. at 10.

19

been made and refused, [courts] apply the business judgment rule in reviewing the board's refusal to act pursuant to a stockholder's demand' to file a lawsuit."[69] Because the business judgment rule is the operative standard, a plaintiff stockholder asserting wrongful refusal of a demand must allege with particularity "facts that give rise to a reasonable doubt as to the good faith or reasonableness of [the Board's] investigation" and deliberations.[70] To do so, the plaintiff must plead particularized facts to support an inference that the board of directors committed gross negligence or acted in bad faith in rendering a decision to refuse a demand.[71]

The Complaint fails to allege any facts supporting an inference that the Board wrongfully rejected the demand. Indeed, the Complaint fails to acknowledge even the Letter or the Response, much less explain how the Response was wrongful. And the content of the Response chafes against Plaintiff's argument. As explained in its Response, the Board, "[w]ith the aid of counsel," conducted an investigation, which included, among other things, "a review of pertinent documents (including publicly available documents and confidential Company documents), as well as interviews

---

[69] *Spiegel*, 571 A.2d at 773–74 (alteration in original) (citation omitted).

[70] *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 124 A.3d 33, 36 n.10 (Del. 2015).

[71] *See City of Tamarac*, 2019 WL 549938, at *6 ("Plaintiff must allege particularized facts that raise a reasonable doubt that (1) the board's decision to deny the demand was consistent with its duty of care to act on an informed basis, that is, was not grossly negligent; or (2) the board acted in good faith, consistent with its duty of loyalty." (quoting *Busch*, 2018 WL 5970776, at *8)).

of the Chairman of the Compensation Committee and the Compensation Committee's independent compensation consultant, Radford."[72]  The Response also sets forth the substantive reasons underlying the Board's decision with respect to the demand.[73]  Finally, the Response describes other considerations affecting the Board's decision to refuse the demand, including the claims' likelihood of success on the merits and the costs of pursuing litigation.[74]

For these reasons, the Complaint fails to allege particularized facts showing that the Board wrongfully refused Plaintiff's pre-suit demand.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED.

IT IS SO ORDERED.

---

[72] Response at 2.

[73] *Id.* at 3–4.

[74] *Id.* at 4–5.